# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SHELLY L. SWAIM,

    *Plaintiff,*

vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    *Defendant.*

Case No. 15-9287-EFM

## MEMORANDUM AND ORDER

Plaintiff Shelly Swaim seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff alleges that the administrative law judge ("ALJ") erred in assessing her residual functional capacity ("RFC") because he did not account for her headaches or her need for an assistive device. Having reviewed the record, and as described below, the Court affirms the order of the Commissioner.

### I.    Factual and Procedural Background

Shelly Swaim was born on November 3, 1972. On July 13, 2012, Swaim applied for disability insurance benefits and supplemental security income alleging a disability beginning on January 15, 2010. Swaim alleged that she was unable to work due to a variety of conditions.

Her application was denied initially and upon reconsideration. Swaim then asked for a hearing before an ALJ.

ALJ Timothy Stueve conducted an administrative hearing on February 26, 2014. Swaim was represented by two non-attorney representatives, and Swaim testified about her medical conditions. The ALJ also heard from a vocational expert.

On April 16, 2014, the ALJ issued his written decision, finding that Swaim had not engaged in substantial gainful activity since the alleged onset date. The ALJ found that Swaim suffered from borderline intellectual functioning, depression, status post open reduction and internal fixation right ankle, status post left distal fibula fracture, cervical and thoracic degenerative disease and history of concussion resulting in posttraumatic headaches. The found that Swaim's impairment or combination of impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

> The ALJ determined that Swaim had the RFC
>
> to perform sedentary work (Occasionally lift ten pounds, sit for approximately six hours, stand, or walk for approximately two hours in eight hour day with normal breaks) as defined in 20 CRR 404.1567(a) and 416.967(a) except: She can occasionally climb ramps and stairs, but can never climb ladders, ropes and scaffolds. She is limited to occasional stooping, kneeling, crouching, and crawling. She must avoid exposure to vibration and to workplace hazards such as unprotected moving mechanical parts and unprotected heights. Work is limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any, work place changes. She can have no interaction with the general public.

The ALJ then determined that Swaim was not capable of performing any of her past relevant work. However, considering Swaim's age, education, work experience, and RFC, the ALJ determined that national jobs existed in the national economy that Swaim could still perform.

Thus, the ALJ concluded that Swaim had not been under a disability from January 15, 2010, through the date of his decision.

Given the unfavorable result, Swaim requested reconsideration of the ALJ's decision from the Appeals Council. The Appeals Council denied Swaim's request on July 28, 2015. Accordingly, the ALJ's April 2014 decision became the final decision of the Commissioner.

Swaim filed a complaint in the United States District Court for the District of Kansas. She seeks reversal of the ALJ's decision and remand to the Commissioner for a new administrative hearing. Because Swaim has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[1] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[2] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[3] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[5] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[6]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[9] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's

---

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[8] *Barkley*, 2010 WL 3001753, at *2.

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[10]

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists in the national economy, respectively.[11] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[12] The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[13]

### III.    Analysis

Plaintiff contends that the ALJ erred in making the RFC finding because he (1) noted that Plaintiff's history of concussion and posttraumatic headaches were severe but did not account for it in the RFC, and (2) failed to take into account Plaintiff's need for an assistive device in the RFC.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations."[14] Under SSR 96-8p, an RFC assessment "must include a narrative discussion describing how the evidence

---

[10] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[11] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id.*

[14] *White v. Barnhart*, 287 F.3d 903, 906 n. 2 (10th Cir. 2001).

supports each conclusion, citing specific medical facts . . . and nonmedical evidence."[15] In addition, the ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence in the case record.[16] An ALJ must also "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."[17] However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[18]

In this case, the ALJ found that Plaintiff had the RFC to perform sedentary work with several additional limitations. These include no interaction with the general public; work being limited to simple, routine, and repetitive tasks that involve only simple, work-related decisions; and few workplace changes. In addition, she was to avoid exposure to vibration and workplace hazards. She was limited to occasional stooping and kneeling and could occasionally climb ramps or stairs.

Plaintiff first complains that the RFC does not take into account her severe headaches. The Court disagrees. It appears that the ALJ took into account Plaintiff's headaches when he limited her to simple and repetitive work with no interaction with the public. Numerous times throughout the decision, the ALJ discussed Plaintiff's headaches. The ALJ found, however, that Plaintiff was not entirely credible regarding the severity of the headaches. Specifically, the ALJ

---

[15] *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

[16] *Id.*

[17] *Id.*

[18] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

noted that the medical evidence demonstrated that her headaches appeared to improve over time, there was an infrequency of care or little care sought regarding the headaches despite the severity allegations, and her treating physician's notes did not match the frequency or intensity of headaches she alleged to the ALJ. As noted above, the ALJ limited Plaintiff to simple and repetitive work. Thus, it appears that the ALJ's sedentary RFC finding took into account Plaintiff's headaches.

Plaintiff next asserts that the ALJ failed to take into account her need for an assistive device, i.e. a cane, in the RFC. It is undisputed that the ALJ did not include any limitation in the RFC relating to Plaintiff's alleged need for a cane to ambulate. The ALJ, however, discussed Plaintiff's reliance on a cane throughout the opinion and determined that based on the medical and opinion evidence before him that Plaintiff was limited to sedentary work with additional limitations. The ALJ noted when Plaintiff used the cane (primarily the months following her car accident in December 2011 and after a fall in September 2012), what it was primarily used for, and whether work could be done while using the cane. He relied on the opinions of at least two doctors who were aware that Plaintiff used a cane and opined that she was able to perform sedentary work.[19] During the hearing, the ALJ noted Plaintiff's use of the cane. The ALJ also discussed Plaintiff's ability to work approximately twenty hours a week in late 2012 despite her difficulty in ambulating. Finally, the ALJ stated that it appeared that Plaintiff's ability to ambulate was impacted by her car accident and fall, and her ability to ambulate continued to

---

[19] The ALJ also noted Plaintiff's primary physician's opinion. In discussing this opinion, the ALJ found that Dr. Sherard stated that she would not be able to obtain meaningful employment. He noted that Dr. Sherard's opinion was given in the context of attempting to maximize an insurance settlement and was not intended to address social security disability determinations. The ALJ also noted that Dr. Sherard stated that Plaintiff would be limited to desk work which would not preclude her from full-time sedentary work.

improve over time.  Accordingly, it appears that the ALJ took Plaintiff's use of a cane into effect when determining her RFC.

As noted above, this Court's job is not to reweigh the evidence or substitute its judgment for that of the Commissioner.[20]  Instead, the Court must review the record to determine if substantial evidence supports the ALJ's decision and whether the ALJ sufficiently articulated the reasons to provide for meaningful review.[21]  In this case, the Court finds that the ALJ cited to substantial evidence in the record and adequately explains and links the RFC assessment to that evidence.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 17th day of August, 2016.

*[signature]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[20] *Bowman*, 511 F.3d at 1272 (citing *Casias*, 933 F.3d at 800).

[21] *Lax*, 489 F.3d at 1084.